### FARLEY *v.* VAUGHN *et al.*

It would be a fraud, which no Court of Equity could tolerate, to hold that the vendor of land on a contract to convey, receiving a portion of the purchase money, and seeing the vendee expend large sums of money, improving the property, without objection, and not making any demand of the purchase money, should insist, because the vendee had not literally complied with the provisions of his contract on his part, on holding the whole contract forfeited, claim the land and the money paid, and all the improvements, and deny all obligation on his part to comply with his engagements.

In such a case, where there has been a compliance with a reasonable understanding of the contract, and no injury done by the want of an exact compliance, a specific performance will be decreed.

Appeal from the District Court of the Fifteenth Judicial District, County of Butte.

A statement of facts appears in the opinions of the Court.

*Wm. H. Rhodes* for Appellant.

*First*—The demurrer in the District Court ought to have been sustained:

1st. Because the complaint is a Bill in Equity, to obtain specific performance of an alleged agreement for the purchase of land; yet the complaint nowhere alleges that said agreement, or any note or memorandum thereof expressing the consideration, was in writing; nor does the said complaint set out any such agreement, as having been executed in writing.

The agreement therefore, if simply existing by parol, *is void.* Stat. Fraud. sec. 8.    Wood's Dig., p. 106.

This statute has received a judicial interpretation at the hands of this Court, and the strict rule adopted (that no equitable construction can control) that unless the words of the statute are fully complied with, no relief will be granted.    All equity usurpation is abrogated. Abell *v.* Calderwood, 4 Cal. 90.

2d. But if it be contended that the bond itself, which is copied in the complaint, is such a note or memorandum of the agreement as would fulfill the requirements of the statute, then the defendant contends that the bond does not express *the consideration* of the contract.

The language of the statute is not that the note, etc., must express *a* consideration, but " *the consideration.*" The complaint sets forth " the consideration" of the contract for the sale of the land, as five hundred and thirty-three dollars. The consideration mentioned in the bond, is the payment within four months of the sum of three hundred and eighty dollars, in accordance with the provisions of two promissory notes.

3d. The complaint shows that the bond was not the contract.    It alleges that it was executed after, and in " pursuance of the contract of purchase and sale," and not until the payment of one hundred and fifty dollars and the execution of two certain promissory notes.

4th. It also appears from the complaint itself, that a portion of the *consideration* of the purchase was by agreement paid to a Mr. Randall Hobart, yet this fact nowhere appears in writing, subscribed by the defendant.

The plaintiff therefore is not entitled to recover.

*Secondly*—The demurrer ought to have been sustained, upon the second ground:

1st. Because the plaintiff, by the allegations in his bill, presents to

the Court a clear case of inexcusable *laches.* He admits that he did not pay the notes, or either of them when they fell due; yet he alleges that he knew precisely where they were.

He shows that the first note fell due on the thirteenth October, 1856, yet he avers no tender until the tenth February, 1857; that the second note fell due the thirteenth December, yet he did not offer to pay it till tenth February, 1857.

He shows furthermore, that the deed to be executed was to be executed " at the request of the plaintiff within four months," yet he does not show any such request until the tenth February, 1857, nearly two months after the time expired for the payment of the notes; and nearly a whole month after the period expired " within " which the request was limited to be made. The rule " that he who seeks equity must do equity," applies with full force to bills for a specific performance.

The party plaintiff must first show his own readiness and willingness to perform, before he can call upon the defendant to do so. Willard's Eq. Juris. 291; Brown *v.* Covillaud, 6 Cal. 566; Goodale *v.* West 5 Cal. 341; Story's Eq. J., sec. 771.

It may therefore be stated as a general principle, that a Court of Equity will in no case decree a specific performance where the plaintiff is in default, unless he comes into Court with clean hands, and *makes a case* fully excusing his negligence. See the case of Drew *v.* Duncan, 11 How. Pr. Rep. 279. In the case at bar the plaintiff admits his negligence, but endeavors to excuse it by setting up the peculiar circumstances inducing the delay. We shall therefore inquire *Second,* whether the matters set up are sufficient for that purpose?

The only reason alleged by the plaintiff is, " *because at the time the contract was made, and at the time the notes fell due, the defendant, Vaughn, was not the holder of the legal title of said premises.*" To render this excuse of any avail, two things were indispensable prerequisites.

1st. That by the agreement for the purchase and sale, it was stipulated that the title conveyed should be the legal title; and

2d. That the deed agreed to be given should be such as at law would convey " the *legal title.*"

Now the complaint nowhere alleges that the defendant agreed to convey " the legal title " of the land to the plaintiff; no agreement to that effect is set out, and we may reasonably conclude, therefore, that none such was made.

With regard to the second prerequisite, we have written testimony to guide us; indeed, aside from the bond itself, the complaint contains an allegation that the defendant agreed to execute to the plaintiff, for the consideration set out, a *quitclaim deed to the premises*.

The inquiry then presents itself: What are the nature, requisites, and effect of a quitclaim deed ?

The deed which seems to have been agreed on, or at least which is tendered by plaintiff to defendant to execute, and which has been fully set out in the complaint, contains only the following form of conveyance : " By these presents, I do hereby *remise, release, and quitclaim, etc.*, all my right, title, interest, estate, claim, and demand, both at law and in equity, and as well in possession as in expectancy," to which there is no *habendum and tenendum*, and, no covenants of warranty attached. 2 Hill. on Real Prop. 318, and note (a) ; Doyle *v.* Knapp, 3 Scam. 338 ; 2 Hill. Real Prop. 318 ; Fray *v.* Pierce, 7 Mass. 381; Russell *v.* Coffin, 8 Pick, 143 ; 12 Iredell, 184 ; 12 New H. 291 ; 2 Hill. R. Prop. 399, and note (a) ; Allen *v.* Holden, 20 Pick, 458 ; Sweet *v.* Brown, 12 Met. 175 ; 2 Hill. R. Prop. 423 ; Gayley *v.* Price, 16 John, 269 ; 12 do. 442.

This general rule of law is not changed in any respect by our statute. The statute refers only to " conveyances purporting to convey the real estate in fee simple absolute," and prescribes that all subsequently acquired titles " shall immediately pass to the grantee." Wood's Dig., p. 103, art. 370.

The statutes of Missouri contain the same provision *verbatim;* Mo. Rev. Stat. 119 ; and yet it is held that the act does not apply to a *quitclaim deed:* Boge *v.* Shoab, 13 Mo. 365.

Hence the excuse set up for non-performance on the part of the plaintiff amounts to nothing, and should be entirely disregarded by the Court.

But the plaintiff had no right to postpone payment for any purpose, under the agreement as set out. He shows that possession was

delivered to him, and that from a very small portion of the land sold he was deriving an income of fifty dollars per month.

*Robinson & Beatty* for Respondent.

From the first passage of the statute of frauds, in the reign of Charles the Second, down to this time, there has been one uniform current of decisions by all the Chancellors, without one dissenting voice, either in England or in America, so far as we are aware, declaring that they will enforce contracts by a decree for a specific performance, whenever there is an agreement in writing (whether expressed in one instrument or several referring to each other, and connecting themselves as part of one transaction) from which the Court can infer by proper rules of construction and interpretation, that there has been an agreement on one part to buy and on the other to sell. No set form of words is required to make a contract for the sale of land valid. 24th Wendell, p. 41; Story's Equity Jurisprudence, sec. 715.

A *consideration* expressed in a contract for the sale of land is, so far as that contract is concerned, *the consideration.* It is *the consideration* of that contract. Douglass *v.* Howland, 24th Wendell, p. 44.

In this case it is contended that the plaintiff has no equitable claim to relief, for two reasons. First, because he did not pay the amount of the purchase price the day it fell due ; and second, (the appellant only slightly alludes to this objection) that the condition of the parties was altered before a compliance with the terms of the contract was demanded to be complied with.

With regard to the first point, there is no conflict of authorities; time is not of the essence of an ordinary contract for the sale and purchase of land. See Story's Equity Jurisprudence, secs. 775 and 776, and the notes and authorities there cited. There is no pretense in this case that there is anything in the form of the contract making time an essential part of the agreement. The only ground here relied on is the *great lapse of time* which transpired after the day the contract was to have been performed before a tender of the money and request for the deed was made by the plaintiff. The time within which the deed was to have been made, according to the original contract, expired on the thirteenth day of January. On the sixteenth

day of February, just one month and three days after, the money was tendered for the notes and a deed demanded. Now, in all the cases which we have examined, where great lapse of time has been assigned for a refusal to enforce a contract in a Court of Equity, we remember none where the time was less than seven years, (Brown v. Covillaud excepted) and in most of the cases the time elapsed has been from ten to twenty years. In Brown v. Covillaud the time elapsed before demand was over four years from the making of the contract, and over three years after the last of the purchase money fell due. Yet the Court lays but little stress in its decision on the lapse of time. The main points in this case are, that the plaintiff took advantage of the unsettled state of the country to avail himself of the chances, either to hold under his purchase, or disclaim the title of the vendor and hold as a settler, as future events might show would be most profitable to him.

As for the change of the condition of the parties in relation to title, the facts of this case are a sufficient answer to any objection on that head. The bond is dated thirteenth of October, 1856. The deed is to be made within four months, at the request of plaintiff. If he did not ask it sooner, the deed should have been executed on the thirteenth of January, 1857. The sale of the defendant, Vaughn, by the administrator, was confirmed on the fifteenth of January, 1857, eight days before the time of executing the deed. Had Vaughn made his deed on that day, although he had no legal title, still he had a fixed and certain equity which would have passed to Farley, and entitle him to receive the deed from the administrator; or if the administrator still proceeded to make the deed to Vaughn it would have passed to plaintiff under the operation of our statute. See Wood's Dig., p. 103, art. 370.

No principle is better settled than this: that Courts, in interpreting written contracts, will not only look to the language of the contract itself, but will look to all the surrounding circumstances connected with the parties of the contract, and the subject matter of the contract. The law on this subject is well collated in Parsons on Contracts, vol. 2d, from page 69 to 78, inclusive. Now, if the Court takes into consideration the fact that Vaughn had bought this land at

administrator's sale; that this was the only claim or title which he set up to it; that the law requires that a certain time shall elapse after the administrator's sale before the same shall be confirmed; that the plaintiff was put in possession at the time of his purchase; that when he purchased and took possession he paid one hundred and fifty dollars to the administrator, who sold the land to Vaughn; there is no difficulty in understanding the contract.

In the case of Calmes v. Birch, 4th Bibb, 453, Ch. Justice Boyle (who stands pre-eminent among the Kentucky jurists) says: "As far as we are aware, there is no example of a Court of Equity refusing, on the ground of lapse of time, its aid to one who has been in continual possession."

In the case of Kercheval v. Swope & Clift, reported in the 6th vol. of Monroe's Reports, (Kentucky) page 362, we have a case almost exactly like this.

BALDWIN J., delivered the opinion of the Court—TERRY C. J., concurring—FIELD, J., having been consulted in the Court below, did not sit in the case.

This was a bill filed for a specific performance of a contract for the sale of certain real estate. A demurrer was interposed to the bill and overruled. The question here is as to the sufficiency of facts stated to sustain the judgment of the Court. The bill charges that about the thirteenth of September, 1856, the plaintiff entered into a contract with the defendant, Vaughn, for the purchase of the real estate in dispute; the purchase was in consideration of five hundred and thirty-three dollars, to be paid thereafter by the plaintiff to defendant, and the bill avers that, in consideration of this sum, the defendant sold the undivided half of the property; that in pursuance of this contract the plaintiff, on the thirteenth of September, 1856, paid to one Hobart one hundred and fifty dollars, for the use of the defendant, which was agreed to be paid and taken as a part of the purchase money; that the plaintiff also made, at the same time, his two promissory notes— one for one hundred and sixty-three dollars, payable thirty days from date, with interest at three per cent. per month; and the other for two hundred and eight dollars and seventy-five cents, at ninety days;

that Vaughn thereupon executed his bond, the condition of which was that if, within four months from date, (September 13th) upon the request of plaintiff, and the payment of three hundred and eighty dollars, according to the tenor of the notes before recited, Vaughn should make, execute and deliver to him a good and valid deed (quit-claim) of the land, describing it, and should also acknowledge the same to be his free act and deed, the obligation to be void—else to remain in force ; that on and after, and in pursuance of this agreement, plaintiff was let into possession, and that, with one Lyman Bristol, who had bought the remaining interest of the defendant, he made valuable and permanent improvements, and with the knowledge and consent of Vaughn, caused the land to be surveyed into streets, etc., in accordance with the plan of the town of Oroville, where the land is situated, and also sold portions of it to other persons, who have made improvements.   The bill further avers that at the time of this contract and of the maturity of the notes, Vaughn was not the holder of the legal title to the premises, but claimed as a purchaser under a sale made by one Hobart, who was administrator of the estate of one Carlton, deceased ; and that, at the maturity of the notes, the sale by Carlton's administrator to Vaughn had not been confirmed, and no deed had been made by the administrator to Vaughn ; that the sale was not confirmed until the fifth of January, 1857, and the deed to Vaughn was made on the seventeenth of the same month ;  that about the time of the maturity of the promissory notes, they were in possession of Hobart, Carlton's adminstrator, and that at said time plaintiff had caused to be deposited in a banking house in Oroville three hundred and eighty dollars for the payment of the notes, and which sum was subject to the order of Hobart, in case the sale of the land to Vaughn should be confirmed ; that said Hobart did not draw the money from the house and apply the same to the payment of the notes, for the reason that the sale had not been confirmed, and for the reason that proceedings had been instituted for setting aside the administrator's sale.   Plaintiff further avers that the notes have been since delivered back by Hobart to Vaughn ; that the title of Vaughn has been perfected by the execution of the administrator's deed ; that Vaughn has not at any time tendered to the plaintiff a good and sufficient deed of

quitclaim and demanded payment of said notes; that on the tenth of February, 1857, plaintiff did tender to Vaughn the full amount due upon said two several promissory notes, with interest, and further tendered to Vaughn a quitclaim deed to be by Vaughn executed and delivered to plaintiff, which money Vaughn refused to accept, and also refused to execute the deed; the bill then alleges that the defendant conveyed a portion of the premises to Mrs. Newell, the other defendant. The bill also avers a readiness to pay the principal and interest due, etc.

The defendant, Vaughn, demurred to the complaint. Several causes of demurrer were assigned. 1. That the complaint did not state facts sufficient to constitute a cause of action; and this, because the complaint is upon a contract of sale of land, and no allegation that the same or any part thereof is in writing; nor is any such contract set out in the bond, nor any such consideration therein mentioned. 2. That there is no allegation of tender of payment of the notes at maturity, nor of actual payment; but on the contrary, plaintiff states that at the maturity of the notes the plaintiff caused three hundred and eighty dollars to be deposited, and to be paid in case the Probate sale was confirmed; yet the deed to be given was a mere quitclaim. 3. That the complaint disclosed *laches*, and set up no sufficient ground for relief in equity.

Upon the case thus made we will proceed to state the principles of law applicable to it; and consider whether by force of these the judgment of the Court below can be maintained.

It is not necessary to consider whether a mere oral contract for land may be specifically enforced in equity; or whether the circumstances of this case, if the contract existed merely in parol, would entitle the plaintiff to specific execution of the agreement. For here, there was an agreement in writing, under seal, apparently upon sufficient consideration, for the land sued for in the action. There is nothing in the point that the contract must state the precise consideration of the agreement, especially if the contract be under seal. This has been decided so often, that it would be a waste of time to consider the point further.

The main and only point worth considering is, whether, under the

facts stated in the bill, the lapse of time intervening between the period mentioned in the contract and the date of the tender of the purchase money is sufficient to defeat the claim of the plaintiff to a specific performance.

About two months elapsed after the maturity of the notes, and about a month from the expiration of the four months mentioned in the contract, before the tender ; and no special circumstances are shown even conducing to prove that any material change had happened in the meantime in the relations of these parties, or in the value of the property.   On the contrary, there appears upon the face of the contract a very plain intimation that this contract was made in direct reference to the state of the title, and that the making of the deed by Vaughn was deferred until he could get the deed from the administrator of Carlton ; for it seems that the parties knew that the title — or the only pretense of it on the part of Vaughn — was to be got from that source.   The plaintiff paid a portion of the purchase money to the administrator ; went into possession ; made valuable improvements with the knowledge and consent of Vaughn ; and a period of time after the maturity of the notes given for the making of the deed — the deed to be made on the request of the plaintiff — and in the meantime proceedings were going on in the Probate Court, which it was necessary should be terminated in order that the plaintiff might get any title at all.   It is true that the defendant contracted to give a quitclaim deed ; but the whole statement shows that what was meant by this was not a quitclaim deed of the right held at the time of the contract, or even at the time of the maturity of the notes, but of the interest to be obtained by the defendant at the time of request, after the expiration of the four months mentioned in the agreement.

This application is addressed to the discretion of the Court of Equity ; and we think the facts stated in the bill are sufficient to account for the short delay occurring after the expiration of the time expressed in the contract.   That period was not limited to four months, much less to the maturity of the notes.   The phraseology adopted by the parties evidently contemplated that the time of demand or request by plaintiff for the deed might be extended beyond this period ; and it is only fair to infer from the whole facts stated, that it was the

Farley *v*. Vaughn.

understanding of the parties that if a demand was made within a reasonable time after the expiration of the four months this would be sufficient, and that this provision as to time was inserted in the paper in order that the title might be perfected under the Probate sale.

It seems to us that it would be a fraud which no Court of Equity could tolerate, to hold that the defendant, receiving a portion of the purchase money, and seeing the plaintiff expend large sums of money, improving the property without objection, and not making any demand of the purchase money, should insist, because the plaintiff had not literally complied with the provisions of his contract on his part, on holding the whole contract forfeited, claim the land and the money paid, and all the improvements, and deny all obligation on his part to comply with his engagements.

This case is widely different from the cases of Brown *v*. Covillaud and Green *v*. Covillaud. In those cases there had been long delay, to the injury of defendants, and no explanation of the delay, and there were suspicious circumstances.

This case in some of its features is not unlike the case of Beck *v*. Simmons (7 Ala. 76). That, it is true, was a case of attempted rescission of a contract for failure of compliance with the terms of agreement. The Court in that case says:

" It appears from the proof that it was well known at the time of the exchange that the title to the Kirkland tract was not in the plaintiff in error, but that the land belonged to certain minors, of whom the plaintiff was the guardian, and that it was expected and understood that he was to cause the land to be sold and procure the title. It would be contrary to equity and good conscience to permit one who proceeds so far in a purchase as to obtain possession, with knowledge of a defect in the title, to object afterwards the want of title as a reason for not complying with his contract.

" If he knows that the defect can only be obviated by a judicial proceeding, it is impossible to suppose that the time stipulated for the completion of the contract was considered by him an essential ingredient of the contract, as it could not be known what length of time it might take to obtain the title. The question, therefore, in such cases, is not whether the party was able to make the title on the day stipu-

lated, but whether there was unreasonable delay in obtaining it." (Selton v. Slade, 7 Vesey, 265 ; Colton v. Wilson, 3 Wins. 190.)

It would seem that this reasoning is as applicable to show that it would be as inequitable to hold the delay in applying for the title under the circumstances set forth here, as a ground to defeat the plaintiff's right to a title. No material injury is shown to have been done the defendant by this delay. From the terms of the contract, taken in connection with the payment of a portion of the purchase money to Hobart, Carlton's administrator, and the handing of the notes to him by the parties, and the want of any title in Vaughn except what he got, or was to get, from the administrator of the estate, it is fairly inferable that it was the understanding of these parties that the title was to be procured by Vaughn from the administrator before he made his deed to the plaintiff; and but a short period elapsed after it was so procured before it was demanded by the plaintiff. We see nothing in the recent case of Green v. Covillaud which militates with this view. Indeed, in that case we studiously sought to exclude the presumption that the decision embraced cases of this sort.

The decree of the Court below is affirmed.