OPINION
PER CURIAM.
Griffin Services, Incorporated appeals the judgment in this contract action brought by WEGCO, Incorporated. Griffin argues primarily that its Seventh Amendment right to a jury trial was violated when the district court awarded damages in addition to those awarded by the jury and granted a declaratory judgment to WEGCO. We vacate the supplemental damage award and affirm the declaratory judgment.
I.
WEGCO is a Maryland corporation that assists its clients in obtaining and executing government contracts. Griffin is a Georgia corporation that provides the federal government with commercial facilities management and mechanical maintenance services.
In late 1994, WEGCO approached Griffin and offered to identify federal government contract opportunities, assist Griffin in obtaining the contracts, and provide support services after the contracts were awarded. Griffin and WEGCO subsequently executed two contracts, the “Kansas City Agreement” and the “New Alexandria Agreement.”[1]
WEGCO’s compensation under each agreement was composed primarily of a percentage of Griffin’s “Net Profit,” which the agreements defined as “all job site revenues minus all job site costs with respect to this work.” J.A. 34, 40. The percentage increased on a sliding scale as the amount of profit increased. Both agreements provided that interest would accrue on late payments at an annual rate of 15 percent.
Griffin was awarded the government contracts that were the subject of the two agreements. In calculating its “Net Profit” for the purpose of making its payments to WEGCO, Griffin identified all revenues from the government contracts and then *71 deducted only direct costs, rather than all costs. Under this methodology, indirect costs such as overhead were not deducted. Griffin subsequently concluded that WEGCO had failed to perform some of the services required by the agreements, and Griffin eventually notified WEGCO that it was terminating the agreements on that basis.
WEGCO challenged the termination and, in March 1998, filed this diversity action in the United States District Court for the Eastern District of Virginia. As is relevant here, WEGCO alleged that Griffin breached the agreements by failing to pay all of the fees due. WEGCO sought money damages and a judgment declaring, inter alia, that (a) Griffin’s failure to pay monies due under the agreements constituted a breach of contract; (b) Griffin was obligated to pay monies then owing under the agreements as well as monies that would be due in the future; and (c) the agreements continued to be valid and binding and could not be terminated. WEGCO also requested an accounting of the agreements. In its answer, Griffin’s allegations included a claim that WEGCO had breached the agreements. Griffin also demanded a jury trial on all issues.
During discovery, WEGCO sought information that would assist it in determining the amount due under the agreements. Prior to the close of discovery on October 30, 1998, Griffin produced the requested information for the period ending July 31, 1998. Griffin never supplemented its discovery responses after close of discovery and WEGCO never moved to compel.
During the ensuing jury trial, the parties introduced evidence regarding whether Griffin had breached the agreements and how damages should be calculated if Griffin had breached. Concerning damages, the parties advanced diverging theories regarding how to interpret the term “Net Profit.” WEGCO argued that only direct costs should be subtracted from revenues and noted that Griffin itself had employed this methodology before the lawsuit was commenced. Employing this methodology, WEGCO’s expert opined that WEGCO was owed “at least $144,404.97 plus interest” under the New Alexandria Agreement, J.A. 100, and “at least $84,284.34 plus interest” under the Kansas City Agreement, id. at 98. WEGCO’s evidence of Griffin’s revenues and costs and its expert’s testimony calculating “Net Profit” from that data accounted for the period ending July 31, 1998. WEGCO produced no evidence of damage calculations for any subsequent period, although it did present evidence that the agreements continued to be in effect.
Its prelitigation conduct notwithstanding, Griffin took the position at trial that all costs—both direct and indirect—should be subtracted from revenues in order to determine “Net Profit.” The methodology advanced by Griffin yielded two possible results for each agreement: WEGCO was overpaid either $15,766 or $16,124 for the New Alexandria Agreement and underpaid either $20,763.11 or $18,962.30 for the Kansas City Agreement.
At the conclusion of the trial, the jury returned a special verdict finding, as is relevant here, that WEGCO had not breached either agreement; that Griffin had breached both agreements by failing to pay sums due to WEGCO; and that “the total amount of the damage to WEGCO caused by Griffin Services’ failure to pay WEGCO what it was due” was $64,000 for the New Alexandria Agreement and $75,000 for the Kansas City Agreement. Id. at 1099,1101.
After the jury was dismissed, WEGCO moved for a declaratory judgment that the agreements continued to be in effect and requested an accounting to determine ad *72 ditional amounts allegedly due WEGCO under the agreements through the date of WEGCO’s motion. WEGCO further requested that this calculation be made by an independent accountant using the methodology WEGCO had advocated at trial. Finally, WEGCO prayed that Griffin be ordered to pay WEGCO any monies that the accounting determined to be due. Griffin opposed the motion, maintaining that granting additional relief would violate its right to a jury trial.
The district court determined that the jury award included damages for the period ending July 31, 1998, and therefore no recalculation of damages for that period was necessary. However, the district court granted WEGCO a declaratory judgment that Griffin had not terminated the agreements and that they were still valid, binding, and in effect. The district court also ordered an accounting of net profits received by Griffin for the government contracts underlying the agreements. The district court directed that the method for calculating “Net Profit” in the accounting would be that proposed at trial by WEGCO’s expert. The district court stated that upon receiving and verifying the results of the accounting, it would order declaratory relief in the amount due. The court also ordered Griffin to allow WEGCO access to its records concerning the underlying contracts twice a year for the duration of the agreements.
The accounting ordered by the district court encompassed the period from August 1, 1998 through February 28, 1999 for the Kansas City Agreement and from August 1, 1998 through November 30, 1999 for the New Alexandria Agreement. Because the auditor could not determine how much of the damage awards the jury allocated to the period between the beginning of the respective contract years (March 1, 1998 for the Kansas City Agreement and December 1, 1997 for the New Alexandria Agreement) and July 31, 1998, the auditor could not calculate the appropriate sliding-scale percentage needed to calculate WEGCO’s compensation. Accordingly, the auditor did not calculate the compensation owed to WEGCO under the Kansas City Agreement, and it calculated the amount owed to WEGCO under the New Alexandria Agreement only for the period from December 1, 1998 through November 30, 1999. As to this period, the auditor determined that the “Net Profit” was $274,663.06 and that Griffin owed WEGCO $102,331.53 plus $4,134.34 in interest.
The district court adopted the findings in the auditor’s report and supplemented those findings with its own determinations. The court concluded that Griffin owed WEGCO $5,485.54 plus $1,371.39 in interest under the New Alexandria Agreement for the period from August 1,1998 through November 30, 1998. The district court further determined that Griffin owed WEGCO $27,775.86 plus $6,131.14 in interest under the Kansas City Agreement for the period of August 1, 1998 through February 28, 1999. A final judgment was then entered against Griffin for $286,229.80, $139,000 of which represented the jury verdict and $147,229.80 of which represented the supplemental damages awarded by the district court.
II.
Griffin first argues that the district court erred in supplementing WEGCO’s damage award on its breach of contract failure-to-pay claims. We agree.
The Seventh Amendment provides that
[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, *73 shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.
U.S. Const, amend. VII. This protection applies to all suits in which legal, rather than equitable, rights are at issue. See Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Whether the right to a jury trial exists is a question of law that we review de novo. See Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 827 (4th Cir.1994). If a denial of the right to jury trial occurred, we must decide whether the denial constituted harmless error. See id. The error is harmless only if the district court would have granted judgment as a matter of law to the defendant, i.e., if “the evidence is such, without weighing the credibility of the witnesses, that there is only one conclusion that reasonable jurors could have reached.” Keller v. Prince George’s County, 827 F.2d 952, 955 (4th Cir.1987).
In diversity cases, although the substantive rights asserted in a claim arise under state law, “the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.” Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam). Ordinarily, an action on a debt alleged to be due under a contract is an action at law. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 476-77, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Wyler Summit P’ship v. Turner Broad. Sys., Inc., 235 F.3d 1184, 1194 (9th Cir.2000) (“In most instances, a claim seeking money damages for breach of contract is an action at law.”). That a party requests an “accounting” to determine the amount of damages to be awarded does not by itself change the legal nature of a breach of contract claim.[2] See Dairy Queen, 369 U.S. at 477-78 (rejecting notion that a claim for payment of money was equitable solely because the “complaint is cast in terms of an ‘accounting,’ rather than in terms of an action for ‘debt’ or ‘damages’ ”). And, the fact that the claim is one for declaratory relief does not affect the legal or equitable character of the issues to be decided. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).
We conclude that the district court violated Griffin’s constitutional right to a jury trial when it supplemented WEGCO’s damage award. WEGCO’S failure-to-pay claims were simply claims on a debt created by contract. Therefore, Griffin had a Seventh Amendment right to have these claims adjudicated by a jury, and the district court erred in making its own findings regarding what monies were owed WEGCO by Griffin and in supplementing the jury award based on those findings.[3]
*74 WEGCO maintains, however, that the district court did not make findings of fact itself, but rather, simply applied the law to the findings necessarily made by the jury. That is incorrect. First of all, the findings of the district court regarding the amount of Griffin’s revenue and indirect costs for the period beginning August 1, 1998 were not based on any findings made by the jury. Furthermore, although WEGCO argues that a methodology for calculating “Net Profit” can be derived from the jury verdict, we do not agree. WEGCO maintains that the jury accepted Griffin’s figures regarding the amount of revenue and indirect costs and used WEGCO’s methodology because doing so would produce total damages of $139,802, and the total verdict was $139,000. We are not persuaded from the closeness of these numbers that the jury arrived at its verdict in the manner suggested by WEGCO. The most telling evidence that the jury did not do so is that it awarded $64,000 in damages for Griffin’s breach of the New Alexandria Agreement and $75,000 for Griffin’s breach of the Kansas City Agreement; these awards would have been $54,230 and $85,572, respectively, were WEGCO correct about the basis for the jury verdict.[4] Any attempt on our part to divine the methodology the jury employed to reach its verdict would amount to rank speculation.
WEGCO also argues that the district court possessed inherent equitable authority to make the necessary findings and supplement the damage award with additional amounts not submitted to the jury. We know of no authority, however, allowing a district court to act as fact finder regarding a purely legal claim on which a party has demanded a jury trial.
We further conclude that the error of the district court in supplementing the damages awarded by the jury was not harmless. The evidence regarding the appropriate methodology for calculating net profits under the agreements was sharply conflicting, and reasonable juries could have reached different results. Accordingly, we vacate the supplemental damages award.[5] See Pandazides, 13 F.3d at 833 (holding that denial of jury trial was not harmless when evidence was conflicting).
III.
Griffin next argues that the district court violated its Seventh Amendment rights by declaring that Griffin had not terminated the agreements and that they remained in effect.[6] We conclude that any error was harmless. Although the jury did not explicitly find that the agreements remained in force, it did reject Griffin’s only basis for terminating the agreements, namely, its contention that WEGCO had breached the agreements.
*75 Griffin maintains that it was prejudiced by the declaration of its continuing obligation to pay because the jury award already included damages for future, as well as past, nonpayments; thus, Griffin contends that without the declaratory judgment, it would have no further obligation under the agreements. We reject Griffin’s premise that the jury award included damages for future nonpayments. Nothing in the jury instructions or special verdict form allowed the jury to assume that Griffin would continue to breach the agreements after trial or permitted the jury to award damages for breaches that had not yet occurred. The jury was instructed that WEGCO was “entitled to be placed in the same situation as if the contract had not been broken,” J.A. 1008, which would not have allowed the jury to award WEGCO payments to which it was not yet entitled. The special verdict form asked the jury to find the total damages resulting from Griffin’s failure to pay what WEGCO “was due,” again indicating that damages resulting from Griffin’s failure to pay monies not yet due were not to be awarded. Id. at 1099,1101.
IV.
For the foregoing reasons, the supplemental damage award is vacated and the declaratory judgment is affirmed.

AFFIRMED IN PART AND VACATED IN PART.

. The parties also executed a third agreement, the "Parr Agreement,” which is not relevant to the issues before us.

. A claim for damages resulting from breach of contract may be deemed equitable when the plaintiff demonstrates "that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them.” Dairy Queen, 369 U.S. at 478 (internal quotation marks omitted). WEGCO has made no such showing.

. WEGCO argues that this suit was partly equitable because it sought the equitable remedy of specific performance. That is incorrect. Under Maryland law, specific performance is an "extraordinary equitable remedy” that may be granted only when “more traditional remedies, such as damages, are either unavailable or inadequate.” Archway Motors, Inc. v. Herman, 37 Md.App. 674, 378 A.2d 720, 724 (Md.Ct.Spec.App.1977). Here, any non-payment by Griffin was remediable by an award of money damages, and that is the remedy WEGCO sought for its failure-to-pay claims.
Because the only remedy sought for the failure-to-pay claims was legal, WEGCO is also incorrect in its contention that Griffin waived its right to a jury trial on the failure- *74 to-pay claims by failing to plead the defense of election of remedies.

. WEGCO attributes this discrepancy to "Griffin's argument that any loss under one Services Agreement during a particular month should be offset against any gain in the other one.” Br. of Appellee/Cross Appellant at 31. However, no calculations regarding offsets were ever presented to the jury.

. Because we vacate the supplemental damages award, we do not address Griffin’s arguments regarding the correctness of the findings underlying the award. We also do not reach WEGCO’s argument on cross-appeal that the final judgment did not include the exact amount of contractual prejudgment interest due on the date of the final judgment for the supplemental award.

. The partial dissent concludes that the declaratory judgment award was improper under Maryland state law for several reasons. We do not address these state-law issues because they were not raised by Griffin on its appeal to us. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n. 6 (4th Cir.1999).