**Christopher LEWERT**

v.

**BOIRON, INC. and Boiron, USA, Inc.**

**Case No.: CV 11–10803–AB (JPRx)**

United States District Court,
C.D. California.

Signed May 12, 2016

Elaine A. Ryan, Bonnett Fairbourn Friedman and Balint PC, Phoenix, AZ, Anna Faircloth, Jeff S. Westerman, Kenneth A. Remson, Westerman Law Corp., Los Angeles, CA, Manfred Patrick Muecke, Patricia N. Syverson, Bonnett Fairbourn Friedman and Balint PC, San Diego, CA, Max A. Stein, Nada Djordjevic, Boodell and Domanskis LLC, Chicago, IL, Stewart M. Weltman, Siprut PC, Chicago, IL, for Christopher Lewert.

Amy Waterman Byrd, Orrick Herrington and Sutcliffe, Los Angeles, CA, Christina Guerola Sarchio, Orrick Herrington and Sutcliffe LLP, Washington, DC, Elliott S. Henry, Raija J. Horstman, Valerie M. Goo, Orrick Herrington and Sutcliffe LLP, Los Angeles, CA, Thomas S. McConville, Orrick Herrington and Sutcliffe LLP, Irvine, CA, for Boiron, Inc. and Boiron USA Inc.

**Proceedings: [In Chambers] ORDER DENYING Motions for Summary Judgment (Dkt. Nos. 242, 244), DENYING Defendants' Motion to Strike (Dkt. No. 273), and DENYING in part and GRANTING in part Plaintiff's Motion to Strike (Dkt. No. 272)**

Present: The Honorable ANDRÉ BIROTTE JR., United States District Judge

Before the Court are Plaintiff's Motion for Partial Summary Judgment ("Pl.'s MSJ"), filed October 13, 2015 (Dkt. No. 242); Plaintiff's Motion to Strike Certain Expert Opinions Submitted by Defendants ("Pl.'s Motion to Strike"), filed November 16, 2015 (Dkt. No. 272); Defendants' Motion for Summary Judgment ("Defs.' MSJ"), filed October 13, 2015 (Dkt. No. 244); and Defendants' Motion to Strike Plaintiff's Expert ("Defs.' Motion to Strike"), filed November 16, 2015 (Dkt. No. 273).[1] The parties timely filed their respective Oppositions to these Motions on November 9, 2015 and November 23, 2015 and timely filed their respective Replies on November 30, 2015. Dkt. Nos. 265, 267,

---

1. Also before the Court is Plaintiff's Motion to Strike Defendants'. Response to Plaintiff's Statement of Additional Facts and Statement of Genuine Disputes of Material Fact. Dkt. No. 312. The Court does not rely on Defen-'dants' Response to Plaintiff's Statement of Additional Facts and Statement of Genuine Disputes of Material Fact in reaching its con-clusions in this Order. Accordingly, the Court **DENIES AS MOOT** Plaintiff's Motion to Strike this document. Additionally, the Court has reviewed the parties' objections to the evidence submitted in support of both Motions for Summary Judgment. Unless otherwise addressed in this Order, these objections are **OVERRULED** as raised here.

282, 286, 293, 294, 295, 297. After this matter was transferred to this Court's calendar on December 14, 2015 (Dkt. No. 317), the Court heard oral argument on March 28, 2016 and took the matter under submission. Dkt. No. 324. For the following reasons, the Court **DENIES** the parties' Motions for Summary Judgment, **DENIES** Defendants' Motion to Strike, and **DENIES** in part and **GRANTS** in part Plaintiff's Motion to Strike.

## I. BACKGROUND

The crux of the parties' dispute is whether Defendants' products, Oscillococcinum and Children's Oscillococcinum (the "Products" or "Oscillo"), provide relief for flu-like symptoms as promised on the Products' packaging. 2d Am. Compl. ("SAC") ¶ 1, Dkt. No. 128; Pl.'s MSJ at 1; Defs.' MSJ at 1. Oscillo is a homeopathic drug labeled as containing the active ingredient Anas Barbariae Hepatis et Cordis extractum 200ck HPUS ("Anas Barbariae"), derived from crushed and incubated duck hearts and livers and the inactive ingredients sucrose and lactose. SAC ¶ 2; Pl.'s MSJ at 2; Defs' Separate Statement of Genuine Issues of Material Fact ("Defs.' SGD") Nos. 4–6, 11. It is undisputed that the Anas Barbariae is incorporated into Oscillo by mixing 1 ml of a solution with the starting material with 99 ml of a solvent such as water and then repeating this dilution process 200 times according to a method of manufacturing known as the Korsakovian method (thus explaining the number "200CK" in the active ingredient title). SAC ¶ 4; Defs.' SGD Nos. 23–26. After the 200CK dilutions are completed, the final solution is then "impregnated" onto sugar granules made from sucrose and lactose. Defs.' SGD No. 47.

Plaintiff alleges in this class action that Defendants are liable for violations of California's Unfair Competition Law ("UCL"), codified at California Business and Professions section 17200, and California's Consumer Legal Remedies Act ("CLRA"), codified at California Civil Code section 1750, because Plaintiff purchased Oscillo in reliance on Defendants' affirmative representations on its label that Oscillo would relieve Plaintiff's flu-like symptoms and taking Oscillo did not relieve Plaintiff's symptoms as represented. SAC ¶¶ 21–48, 56–78.

Plaintiff now argues in his Motion for Summary Judgment (and Opposition to Defendants' Motion for Summary Judgment) that Oscillo's labeling is false as a matter of law because, as found by Plaintiff's expert Dr. Siavash Kurdistani, the active ingredient in Oscillo has been diluted to essentially zero and thus cannot possibly work to relieve flu-like symptoms. Pl.'s MSJ at 8–11; Pl.'s Reply in support of MSJ at 5–12; Pl.'s Opp. to Defs.' MSJ at 16–20. Defendants respond and argue in their Motion for Summary Judgment (and Opposition to Plaintiff's Motion for Summary Judgment) that, to the contrary, Plaintiff cannot meet his burden to prove Oscillo is ineffective because Dr. Kurdistani is unqualified to offer an opinion in this case and because, even if he were qualified, Dr. Kurdistani's work shows only that Oscillo is highly diluted, while Defendants have presented their own expert testimony and studies to show that Oscillo is still effective to relieve flu-like symptoms despite its dilution. Defs.' MSJ at 16–18; Defs.' Reply in support of MSJ at 2–11; Defs.' Opp. to Pl.'s MSJ at 7–13. Defendants also argue that, regardless of the parties' evidence concerning Oscillo, Plaintiff's claims are barred by the doctrines of implied preemption and primary jurisdiction because the Federal Drug Administration ("FDA") and Federal Trade Commission ("FTC") are currently considering whether to revise their regulations on homeopathic drugs. Defs.' MSJ at 11–15.

The parties' Motions to Strike follow in line with the parties' primary arguments in

the Motions for Summary Judgment. Plaintiff moves to strike from the record and exclude at trial portions of Defendants' expert testimony as well as declarations from physicians providing anecdotal testimony of Oscillo's effects on the grounds that such evidence is unreliable. Pl.'s Mot. to Strike at 3–20. Defendants in turn move to strike from the record and exclude at trial Dr. Kurdistani's expert opinions on the grounds that Dr. Kurdistani is unqualified to offer the opinions he offers and that his testimony is unreliable and biased. Defs.' Mot. to Strike at 3–19.

## II. IMPLIED PREEMPTION / PRIMARY JURISDICTION

■ Before turning to the merits of the parties' arguments concerning Oscillo, the Court must first address the threshold question raised in Defendants' MSJ regarding whether Plaintiff's claims are barred by the doctrines of implied preemption and primary jurisdiction. In August 2013, the Court denied Defendants' Motion for Judgment on the Pleadings on the issues of implied preemption and primary jurisdiction, concluding that Plaintiff's state law claims did not seek to impose any requirements in conflict with federal law (thus excluding the possibility of implied preemption) and recognizing that, although the FDA has regulatory authority over homeopathic drugs and special expertise, Defendants had failed to demonstrate that Plaintiff's claims turned on any particular technical issue that required resolution by the agency. Dkt. No. 78 ("August 2013 Order") at 17–19. Defendants now argue, however, that "significant developments in the Federal government's handling of homeopathy" require the Court to postpone adjudication of the action. Defs.' MSJ at

11–14. Defendants' arguments are not persuasive.

■ First, as it concerns implied preemption, a plaintiff's state law claims are impliedly preempted by federal statute "when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698–99, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) (citations and internal quotations omitted) *as cited in* Defs.' MSJ at 12 and August 2013 Order at 17.[2] Defendants argue that implied preemption should apply because "[i]n this case, *both* the FDA and the FTC are actively evaluating current policies regarding the level of substantiation of safety and efficacy required to be able to advertise and sell homeopathic drugs...." Defs.' MSJ at 13. But on their face, such developments are insufficient to justify implied preemption. Just as the Court found in its August 2013 Order, there is still no indication that Plaintiff's claims seek to impose requirements in conflict with federal law. The state law underlying Plaintiff's claims only requires truthful statements on Oscillo's label, and Defendants have offered no evidence to suggest that federal law requires the opposite or even that, after the current phase of evaluation, federal law may be changed to require the opposite. Indeed, as the Court previously recognized, "Given that Plaintiff's state law claims merely seek to impose requirements that are identical to what federal law already requires, to wit, truthful indications of use on Oscillo's label, it is difficult to imagine under these circumstances how the state law conflicts with, or poses an obstacle to federal law." August 2013 Order at 18.

---

**2.** Defendants do not appear to argue that Plaintiff's claims are barred by the doctrine of implied "field" preemption. Accordingly, the

Court will address only implied "conflict" preemption. *See* August 2013 Order at 17; Defs' MSJ at 12–14.

Defendants have offered no new arguments to warrant departing from this holding.

█ Second, as it concerns primary jurisdiction, Defendants argue that since August 2013, the FDA and the FTC have begun "actively evaluating" their current regulations concerning homeopathic drugs, but Defendants have failed to identify any potential changes in either agency's regulations that would impact whether Oscillo's current label misleads consumers—the question raised by Plaintiffs' claims. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency . . . [and] **is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency,** and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (quotations and citations omitted) (emphasis added); *see also Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (recognizing four factors to consider in applying primary jurisdiction as "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.").

█ Here, Defendants have presented evidence that, since March 2015, the FDA and FTC have held hearings and workshops to evaluate their current regulations concerning homeopathic drugs generally and that the FTC has recommended that the FDA reconsider its regulatory framework for greater consistency with FTC advertising requirements. *See* Defs.' MSJ at 13–14; Defs.' Request for Judicial Notice, Exhibit K, Dkt. No. 245. But to date, none of these developments have resulted in policy changes or even policy change recommendations that show the FDA or the FTC are considering issues related to whether Oscillo's labeling is misleading, and none of these developments demonstrate that the FDA or FTC currently are or will be providing necessary technical guidance on any issues that would impact the outcome of this litigation. The doctrine of primary jurisdiction does not require the Court to delay this litigation based purely on the possibility that the FDA or the FTC might issue new regulations sometime in the future that might change how homeopathy drugs are labeled, particularly when Plaintiff's current claims focus solely on the non-technical question of whether Oscillo's labels are false or misleading.[3] *See, e.g., Lockwood v. Conagra*

---

3. In reaching this conclusion, the Court respectfully disagrees with the holding in *Herazo v. Whole Foods Mkt., Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at *4 (S.D. Fla. July 24, 2015), cited by Defendants. Defs.' MSJ at 14. In *Herazo*, the court stayed the case involving similar allegations against Whole Foods concerning their homeopathic "Cold Ease" and "Flu Ease" under the doctrine of primary jurisdiction because the plaintiffs were "challenging the Indications for Use that the Food and Drug Administration mandates for homeopathic medicine." *Herazo*, 2015 WL 4514510, at *4–5. In reaching this conclusion, however, the court relied on *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 232 (3d Cir. 1990), where the court held that the issue of whether a non-homeopathic over-the-counter ("OTC") drug's ingredient was properly labeled "active" or "inactive" under the FDA's standards warranted the court's abstention. Unlike OTC drugs, which require FDA approval after being evaluated for effectiveness, the efficacy of

*Foods, Inc.*, 597 F.Supp.2d 1028, 1035 (N.D. Cal. 2009) *as cited in* August 2013 Order ("[T]his is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading."). Accordingly, the Court **DENIES** Defendants' MSJ on the issues of preemption and primary jurisdiction.[4]

### III. MOTIONS TO STRIKE EXPERT TESTIMONY

As noted above, the parties have moved for summary judgment primarily on the grounds that the other side's expert testimony should be stricken. The Court will thus first address the parties' Motions to Strike and then apply its ruling on these Motions to the parties' MSJs.

#### A. Legal Standard

Under Rule 702 of the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," provided that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence." *In re Countrywide Fin. Corp. Mortgage–Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1026 (C.D. Cal. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("*Daubert I*")). Thus, before admitting expert testimony, courts must make a "preliminary assessment" of (1) whether the expert is qualified to present the opinion offered, (2) "whether the reasoning or methodology underlying the testimony is scientifically valid," and (3) "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert I*, 509 U.S. at 592–93, 113 S.Ct. 2786; *see also In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F.Supp.2d 879, 889–93 (C.D. Cal. 2004) (using three-part inquiry under Rule 702 to test expert's qualifications, the reliability of the testimony, and the usefulness of the testimony).

In making this preliminary assessment, the court should not weigh conflicting expert testimony or attempt to determine whether the conclusions are correct. *See Wyler Summit P'ship v. Turner Broad.*

---

homeopathic drugs is "not evaluated by the FDA at all." *Delarosa v. Boiron, Inc.*, 818 F.Supp.2d 1177, 1181–83 (C.D. Cal. 2011) (describing differences between FDA's regulation of OTC and homeopathic drugs and recognizing that "[t]he FDA does not impose additional standards for strength, purity, quality, safety, or efficacy on homeopathic OTC remedies"). The holding in *Sandoz* is thus distinguishable—unlike a false advertising claim attacking the labeling of an OTC drug, Plaintiff's claims here do not raise any question regarding Oscillo's efficacy that the FDA has addressed, and notwithstanding De-

fendants' evidence of hearings and workshops, there is no indication that the FDA intends to provide such guidance in the near future. *C.f. Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015) (holding district court did not err in invoking primary jurisdiction where numerous court expected FDA to provide guidance on specific issue raised by the plaintiffs' claims).

4. Based on this ruling, the Court also **DENIES AS MOOT** Defendants' Request for Judicial Notice (Dkt. No. 245).

*Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000) ("It is true that the testimony of an expert fails to create a genuine issue of material fact when 'the expert offers an opinion that courts have rejected as a matter of law.' Here, though, it is Turner's expert, not a court, who rejects the opinions of Forester and Harry. Weighing the credibility of conflicting expert witness testimony is the province of the jury."); *see also* Fed. R. Evid. 702, cmt. 2000 Amend. (recognizing parties offering expert testimony "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.... The evidentiary requirement of reliability is lower than the merits standard of correctness.") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994)). However, the court should "make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*") (recognizing *Daubert I* requires courts to "satisfy themselves that scientific evidence meets a certain standard of reliability" beyond "the expert's bald assertion of validity").

"To this end, the party proffering the expert testimony 'must show that the expert's findings are based on sound science' by providing 'objective, independent validation of the expert's methodology.'" *In re Countrywide Fin. Corp. Mortgage–Backed Sec. Litig.*, 984 F.Supp.2d at 1026 (quoting *Daubert II*, 43 F.3d at 1316). This test for reliability is flexible, however, and the court has "broad latitude" in applying it. *Kumho*, 526 U.S. at 141–42, 119 S.Ct. 1167. The court may consider such factors as (1) the "general acceptance of the method in the scientific community"; (2) "whether the method has been subject to publication or peer review"; (3) "whether the known or potential error rate is acceptable"; (4) "whether the testimony is based on independent research or prepared specifically for litigation"; and (5) "whether the expert points to an objective source to show that she has followed the scientific method." *In re Countrywide Fin. Corp. Mortgage–Backed Sec. Litig.*, 984 F.Supp.2d at 1026 (citing *Daubert II*, 43 F.3d at 1316–19). But ultimately, "the circumstances of the particular case will dictate which factors the district court should consider in making its determination." *Id.* (citing *Kumho*, 526 U.S. at 150, 119 S.Ct. 1167).

### B. Defendants' Motion to Strike

■ The Court begins with Defendants' Motion to Strike, as it is focused solely on the opinions of Dr. Kurdistani, Plaintiff's expert. According to Dr. Kurdistani's expert report, Plaintiff has retained him "to address whether the purported 'active ingredient' listed on the labeling of Oscillo, 'Anas Barbariae Hepatis Et Cordis Extractum—200 CK', includes any of the Anas barbariae hepatis et cordis (duck liver and heart) and whether clinical studies support the claims made on the packaging of Oscillo." Declaration of Elliott Henry in support of Defs.' Mot. to Strike ("Henry Decl."), Ex. A ("Kurdistani Report"), ¶ 6. Based on his analysis of Oscillo's reported preparation and assessment of Defendants' clinical studies, Dr. Kurdistani concludes that Oscillo is "nothing more than a sugar pill with no active ingredients whatsoever" and that "the reported clinical trials that have assessed Oscillo's efficacy are fundamentally flawed and therefore cannot be used to substantiate the claims made by Boiron on the packaging." *Id.* at ¶ 7.

Beginning with the first prong of the court's assessment under *Daubert I*, Defendants argue that Dr. Kurdistani is not

sufficiently qualified to render the opinions he offers. Defs' Mot. to Strike at 4–8. On paper, Dr. Kurdistani's qualifications are substantial. Dr. Kurdistani is a professor and Chair of the Department of Biological Chemistry with a joint appointment in the Department of Pathology and Laboratory Medicine in the David Geffen School of Medicine at University of California, Los Angeles ("UCLA"). *Id.* at ¶ 1. He received his bachelor's degree (B.S.) in Biochemistry from UCLA in 1994 and medical degree (M.D.) from Harvard Medical School in 1999 and completed an internship in Pathology and Laboratory Medicine at UCLA in 2000 and a postdoctoral fellowship in molecular biology in 2004. *Id.* In addition to teaching molecular biology and pathology to first year graduate students and medical students, Dr. Kurdistani heads an active laboratory with students, post-doctoral fellows, and researchers working on issues concerning the human genome's relationship to cancer. *Id.* Dr. Kurdistani developed experience in synthetic organic chemistry after working with 1987 Nobel Laureate Donald Cram as an undergraduate researcher and has also served on the scientific advisory board of three different drug development companies, assisting in pre-clinical experimental design and clinical trial data analyses. *Id.* at ¶ 2. He has published over 45 scientific articles and book chapters, which have been cited over 3600 times. *Id.* Nonetheless, Defendants argue that Dr. Kurdistani should be excluded because the opinion he offers on Oscillo's dilution does not require any of the qualifications he possesses, thus rendering his testimony within "the common knowledge of the average layperson" and outside the scope of Rule 702, and because his critique of Defendants' clinical studies and anecdotal evidence from practicing physicians is based solely on academic rather than practical experience. Defs' Mot. to Strike at 4–8.

In both arguments, however, Defendants have misconstrued the qualification requirements for expert testimony. To render his opinion on Oscillo's dilution, Dr. Kurdistani analyzed Oscillo's reported dilution processes and calculated that, based on these processes, it is "practically impossible to have any molecule of the original material [of the active ingredient] left after 200CK dilution regardless of the concentration of the starting material." Kurdistani Report at ¶ 16. Dr. Kurdistani recognized both in his report and in deposition that the dilution principles he applied in reaching this conclusion "are taught in any introductory chemistry course at the high school or beginning graduate level" and that "[a]nyone with a rudimentary knowledge of chemistry would know these fundamental principles which are discussed in any basic chemistry textbook." *Id.* at ¶ 10; Henry Decl., Ex. B ("Kurdistani Depo") at 229:7–12, 232:16–19. Defendants use these statements to argue that Dr. Kurdistani offers no "specialized knowledge, skill or expertise" on the issue of dilution. Defs' Mot. to Strike at 5. But under Rule 702, an expert's testimony need not be complicated to offer specialized expertise. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2013 WL 4008822, at *6 (W.D. Wash. Aug. 5, 2013) (recognizing there is no "implicit requirement in Federal Rule of Evidence 702 that the proffered expert make complicated mathematical calculations" and admitting accounting expert's testimony where expert's basic role was to "compile the costs and do the math" using general accounting principles); *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544, 2011 WL 5417090, at *5 (N.D. Cal. Oct. 27, 2011) (admitting expert testimony on calculation of damages as helpful to the trier of fact despite party's objection that the testimony offered only "basic mathematical calculations"). Even if a knowledgeable high

school student could recognize the dilution principles discussed in Dr. Kurdistani's report, there is no indication that a common layperson could accurately understand or perform the dilution calculations that Dr. Kurdistani describes in his report without additional instruction or least a refresher course in chemistry. *See* Kurdistani Report at ¶¶ 13–16 (describing calculations to indicate how a concentration of the underlying solution is measured and how many molecules remain after repeated dilutions under the Korsakovian method). Dilution principles are not utilized in most jobs or everyday tasks, and the Court would be hard-pressed itself to understand the dilution principles used in Dr. Kurdistani's report without expert explanation. Accordingly, while Dr. Kurdistani's opinions may be based on relatively simple principles of chemistry, they are nonetheless based on specialized knowledge that the common layperson likely could not express or apply without assistance. *See generally United States v. Finley*, 301 F.3d 1000, 1013–14 (9th Cir. 2002) (holding district court erred in concluding expert offered no specialized knowledge regarding a party's mental health because a common layperson could assess the sincerity of the party's beliefs and warning "[w]e must be cautious not to overstate the scope of the average juror's common understanding and knowledge.... Our case law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge."); *see also United States v. Shay*, 57 F.3d 126, 133 (1st Cir. 1995) *as cited in Finley*, 301 F.3d

at 1013–14 (describing the proper Rule 702 inquiry to be "[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.") (quotations omitted). The Court thus concludes that Dr. Kurdistani possesses sufficient and relevant qualifications to opine on the dilution of Oscillo and that such opinion will assist the trier of fact.

■ Defendants further argue that Dr. Kurdistani is unqualified to opine on four clinical studies Defendants rely upon to prove the efficacy of Oscillo—the "Ferley" study, the "Papp" study, and two "Cassanova" studies [5]—or opine as a rebuttal expert to Defendants' expert Dr. DuMont because Dr. Kurdistani is not a practicing physician and has never run a clinical study himself. Defs' Mot. to Strike at 6–8. But Defendants based this criticism of Dr. Kurdistani on the findings of their own experts, Dr. Isaacman and Dr. DuMont, who Defendants contend are more qualified to opine on clinical studies and the efficacy of Oscillo because they are practicing physicians. *Id.* Such comparisons are generally improper for a *Daubert* analysis. *See Wyler Summit P'ship*, 235 F.3d at 1192; *see also LaCava v. Merced Irr. Dist.*, No. 1:10-CV-00853, 2012 WL 913697, at *5 (E.D. Cal. Mar. 16, 2012) ("Whether an expert is the 'best' qualified or has sufficient specialized knowledge is generally a matter of weight, not admissibility."); *In re Silicone Gel Breast Implants Products Liab. Litig.*, 318 F.Supp.2d at 889 ("A

**5.** Ferley, J.P.; Zmirou, D.; D'Adhemar D. and Balducci F., A controlled evaluation of a homeopathic preparation in the treatment of influenza-like syndromes, BR. J. PHARMACOL., 27, 329–335 (1989); Papp, R.; Schuback, G.; Beck, E; et al. Oscillococcinum in patients with influenza-like syndromes: A placebo-controlled double-blind evaluation, BR.

HOMEOPATHIC J., 87, 69–76 (1989); Cassanova, P., Gerard, R., A study of the therapeutic action of Oscillococcinum in influenza syndromes, (Boiron Inc., 1985) (unpublished); Cassanova, P., The evaluation of 100 randomized observations of Oscillococcinum/Placebo in the influenza syndrome (Boiron Inc., 1983) (unpublished).

court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified. A lack of specialization affects the weight of the expert's testimony, not its admissibility.") (citations omitted). According to his report and deposition testimony, Dr. Kurdistani has years of experience in laboratory research and scientific publication, has served on the scientific advisory board of three different drug development companies, assisting in preclinical experimental design and clinical trial data analyses, and currently teaches students how to evaluate clinical studies. Kurdistani Report ¶¶ 1–2; Declaration of Patricia Syverson in support of Pl's Opp. to Defs' Mot. to Strike ("Syverson Decl."), Ex. 1 at 146:3–149:3, 151:2–153:1, 153:11–154:17, 171:15–177:10, 180:15–181:25, 187:14–188:13 and Ex. 2 at 282:7–284:18, 305:4–26, 308:3. And though his experience differs in kind from Dr. Isaacman and Dr. DuMont, Defendants have offered no reason for why Dr. Kurdistani is objectively unqualified to opine on the credibility of clinical studies or the efficacy of Oscillo based on his chemical evaluation—arguing only that their experts are more qualified than he. Defendants will have the opportunity to cross-examine Dr. Kurdistani and compare his qualifications to their own experts at trial. The Court finds in its pre-liminary assessment, however, that Dr. Kurdistani is sufficiently qualified to offer the opinions in his report and rebuttal report.[6] *See, e.g., In re Zicam Cold Remedy Mktg., Sales Practices, & Products Liab. Litig.,* No. 09-MD-2096, 2011 WL 798898, at *5–6 (D. Ariz. Feb. 24, 2011) (holding expert with expertise in nasal anatomy was qualified to interpret studies on the operation of the drug delivery system for the product Zicam despite having never used the product and despite having never performed research on drug deposition and distribution); *United States v. Bilson,* 648 F.2d 1238, 1239 (9th Cir. 1981) (holding district court did not err in allowing expert to testify regarding psychological tests despite that expert was not a licensed psychologist, noting that the fact that "the doctor was not a licensed psychologist was a matter going to the weight of his testimony" and recognizing that "[a]ppellant's counsel was given ample opportunity on cross-examination to bring this to the jury's attention."); *see also Thomas v. Newton Int'l Enters.,* 42 F.3d 1266, 1269 (9th Cir. 1994) (recognizing Rule 702 "contemplates a broad conception of expert qualifications.").

▮ Concerning the second prong of the *Daubert* analysis, Defendants next argue that Dr. Kurdistani's methodology is inherently unreliable because (1) he conducted

---

**6.** Defendants also argue, without citation to in-circuit authority, that Dr. Kurdistani should be excluded due to the fact that he "affirmatively represented that he wanted to serve as an expert in the case" and thus demonstrated impermissible bias. Defs' Mot. to Strike at 8–9. This is not a sufficient ground to exclude an expert on a *Daubert* analysis. *See United States v. Abonce–Barrera,* 257 F.3d 959, 965 (9th Cir. 2001) ("Generally, evidence of bias goes toward the credibility of a witness, not his competency to testify, and credibility is an issue for the jury."); *see also, e.g., IGT v. All. Gaming Corp.,* No. 2:04-CV-1676, 2008 WL 7084608, at *2 (D. Nev.

Oct. 21, 2008) ("The case law is clear that bias is not a bar to admission of expert testimony, and in this case, the bias is not so prejudicial as to outweigh the probative value of his testimony under Federal Rule of Evidence 403. Plaintiff IGT will have ample opportunity to point out the alleged bias at trial on cross-examination."). And even if it were, the Court does not find that Dr. Kurdistani's mere interest in serving as an expert—after being approached by Plaintiff—demonstrates bias warranting exclusion. Any retained expert receiving compensation for their time presumably has expressed at least some desire to serve in that capacity.

no independent research of clinical studies related to Oscillo outside of the four provided to him to critique; (2) he conducted no chemical testing of Oscillo; and (3) he failed to disclose all of the secondary materials that he reviewed in reaching his conclusions. Defs' Mot. to Strike at 9–15. Much like Defendants' critique of Dr. Kurdistani's qualifications, however, Defendants' complaints concerning Dr. Kurdistani's methodology pertain to the weight of his testimony rather than its admissibility.

Concerning the first point, Defendants contend that Dr. Kurdistani failed to consider "obvious alternative explanations" in the form of other clinical studies that might show Oscillo is effective. *Id.* at 10–11 (quoting Fed. R. Evid. 702 cmt.). Defendants fail to recognize, however, that this rule simply expresses one form of an unacceptable methodology, and it focuses on whether the expert reviewed alternative explanations for the data collected, not on whether the expert considered alternate data sources. As explained in *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543 (N.D. Cal. 2012), "[s]cientific evidence is reliable if it is based on an assertion that is grounded in methods of science—the focus is on principles and methodology, not on conclusions." 287 F.R.D. at 546 (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001)). Thus, in addition to the four factors listed above in Section III.A, such as general acceptance and error rate, courts may consider other factors such as "whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, *see General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); or whether an expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994)." *Id. Claar*, as cited in the advisory notes to Rule 702, provides one example. There, the court held that the opinions of two expert doc-

tors were unreliable in part because the experts had not followed accepted scientific methods of medical diagnosis because they failed to rule out other causes of the injuries that the plaintiffs sustained. 29 F.3d at 502. The conclusion in *Claar* was not that expert opinion is unreliable unless the expert researches all possible alternative sources of data leading to a contrary conclusion. Rather, the conclusion in *Claar* expresses the principle that "[a] methodology may not be reliable if an expert 'fail[s] to address and exclude alternative explanations **for the data on which he bases his findings**' or 'reject[s] studies reporting contrary empirical findings.' " *Pooshs*, 287 F.R.D. at 546 (quoting *Carnegie Mellon Univ. v. Hoffmann–LaRoche, Inc.*, 55 F.Supp.2d 1024, 1034–35 (N.D. Cal. 1999)) (emphasis added).

Applying this rule here, Dr. Kurdistani is not required to research additional clinical studies regarding the overall effectiveness of Oscillo in order to make his conclusions about its chemical makeup reliable. Instead, Defendants' critique would apply only if there were obvious alternative explanations for the dilution data that Dr. Kurdistani considered or if there were obvious alternative explanations for why the four clinical trials that he reviewed were sound. Defendants have not made either showing, however, and their first reliability argument thus fails. *See, e.g., Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) *opinion modified on reh'g*, 866 F.2d 318 (9th Cir. 1989) ("The relative weakness or strength of the factual underpinnings of the expert's opinion goes to weight and credibility, rather than admissibility.") (quotations omitted); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices and Prods. Liab. Litig.*, No., MDL 10–02172, 2012 WL 4904412, at *3 (C.D. Cal. Sept. 20, 2012) (recognizing that whether an expert's "reasonable assumptions are true and whether his opinions

should be accepted in part or in their entirety, are issues going to the weight of his testimony and report, and not to their admissibility").

For similar reasons, Dr. Kurdistani's decision not to run his own chemical analysis is also not fatal to his opinions. The Ninth Circuit has expressly held that an expert's opinion is not unreliable as a matter of law simply because the expert's opinions "are based on data collected by others." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1141–42 (9th Cir. 1997); *see also* Fed. R. Evid. 703. Rather, as long as his testimony is based on "the scientific method, as it is practiced by (at least) a recognized minority of scientists in the field" the expert's opinion is sufficiently reliable to meet the *Daubert* standard for reliability. *Id.* (quotations omitted). Here, Dr. Kurdistani's work appears to conform to this method. He begins with the data supplied by Oscillo regarding its dilution, calculates how this process would dilute the active ingredient, and then reaches the conclusion that, based on his calculations, the 200ck dilution process would virtually eliminate the active ingredient in Oscillo before the solution was impregnated onto the sugar crystals forming the pill. Kurdistani Report at ¶¶ 12–17. Defendants have offered no reason why this process does not conform to the scientific method—arguing only that his conclusion must be speculation because he did not perform the actual dilution process. Defs.' Mot. to Strike at 11. This again goes to weight rather than admissibility.

Concerning the final prong of the *Daubert* test, Defendants argue that Dr. Kur-distani's testimony should be excluded under both Rule 702 and Rule 403 because his opinion is likely to confuse the jury rather than assist them in evaluating the evidence. Defs' Mot. to Strike at 15–18. Of the three arguments Defendants offer on this point, two have already been resolved—the Court has determined that Dr. Kurdistani's opinions are sufficiently reliable to pass Rule 702's standards and that any remaining issues concerning the reliability of his opinions (even those concerning what Defendants describe as "conjecture") may be addressed on cross-examination, and as addressed below, the Court has found that Dr. Kurdistani should supplement his report and will decide at trial whether any of Dr. Kurdistani's opinions should be excluded as previously undisclosed.[7] Defendants' remaining argument is that Dr. Kurdistani's opinions will confuse the jury because he applies a "null-hypothesis" analysis—i.e. analysis of whether there is scientific proof of Oscillo's efficacy—when Plaintiff's claims raise only the question of whether Oscillo works as advertised. Defs.' Mot. to Strike at 16–17. Defendants have presented no authority to suggest, however, that Plaintiff is precluded from supporting his claims of false advertising with testimony concerning scientific proof (or lack of proof) regarding the product's efficacy. Indeed, to deprive Plaintiff of this evidence would significantly hamper his ability to prove that Oscillo is in fact falsely labeled, and the Court finds that Defendants may address any limitations to the "null-hypothesis" approach on cross-examination. Accordingly, in light of the rea-

---

**7.** Defendants also suggest, without authority in support, that Dr. Kurdistani's opinions concerning possible bias in the execution of the Boiron clinical studies should be excluded because it is based on "conjecture." Defs.' Mot. to Strike at 16–17. Dr. Kurdistani offers support for this opinion in his report, however, based on his understanding that Boiron employees were involved in the clinical trials and that Boiron copyrighted the studies. *See* Kurdistani Report at ¶ 24. Thus, his opinion is sufficiently support to pass the threshold test under Rule 702, and any weaknesses in his conclusion may be addressed on cross-examination.

soning discussed above, the Court **DE-NIES** Defendants' Motion to strike Dr. Kurdistani's testimony under Rule 702 and Rule 403.

■ Lastly, apart from the *Daubert* test, Defendants argue that Dr. Kurdistani's testimony should be excluded under Rule 37(c)(1) of the Federal Rules of Civil Procedure for failure to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Under Rule 26(a)(2)(B), an expert must disclose in his report "a complete statement of all opinions the expert will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." Fed. R. Civ. Proc. 26(a)(2)(B)(i)–(ii). The purpose of this rule is "to require the disclosure of 'information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *In re Google Adwords Litig.*, No. C08-03369, 2010 WL 5185738, at *2 (N.D. Cal. Dec. 8, 2010) (quoting Fed. R. Civ. P. 26 cmt 1993 Amend.). And under Rule 37(c)(1), a party who fails to disclose the required materials in its expert report may be barred from using that expert unless there was "substantial justification" for the failure or the failure was "harmless." Fed. R. Civ. Proc. 37(c)(1).

■ Defendants first argue that Dr. Kurdistani failed to disclose all of the materials he considered in developing his opinions and his opinions should thus be excluded under Rule 37(c). Defs.' Mot. to Strike at 11–15. This argument has some merit. Dr. Kurdistani testified in his deposition that he reviewed other materials concerning Oscillo in preparing his report but that he did not recall all of those materials and could not provide a list of them. Kurdistani Depo. at 29:24–25, 36:5–12, 36:17–24, 37:3–12, 56:2–58:24, 203:16–25, 227:2–11, 59:1–16. Plaintiff contends that Dr. Kurdistani did not rely on these materials in reaching his conclusions because he did not believe them relevant and thus had no obligation to disclose them in his report. Pl.'s Opp. to Defs.' Mot. to Strike at 17–18. But as recognized within the Ninth Circuit:

> The scope of discovery should not be limited to documents relied on by the expert in support of his opinions, but should extend to documents considered but rejected by the testifying expert in reaching opinions. In fact, the documents considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by him.

*United States v. City of Torrance*, 163 F.R.D. 590, 593–94 (C.D. Cal. 1995) (citations and quotations omitted); *see also In re Google Adwords Litig.*, 2010 WL 5185738, at *3 ("Rule 26(a)(2)(B)(ii) is worded specifically to provide the opposing party with access to all materials **reviewed or considered** by the expert.") (quotations omitted) (emphasis added). Defendants are thus entitled to know what materials Dr. Kurdistani reviewed but rejected as irrelevant just as much as they are entitled to know what materials Dr. Kurdistani relied upon in forming his opinions. *See, e.g., Propat Int'l Corp. v. Rpost, Inc.*, No. SACV031011, 2005 WL 5957834, at *1 (C.D. Cal. Sept. 19, 2005) ("Rule 26 requires that an expert disclose, among other things, 'the data or other information considered by the witness in forming the opinions' which he expresses. The scope of 'considered' data and information is not limited to material upon which the expert relies. As the case law elaborates, the concept of 'consider' encompasses 'to reflect on: think about with a degree of care or caution; to think of, regard or treat in an attentive, solicitous, or kindly way.' Another court formulated the test this way: 'The

data and information refers to what the expert saw, heard, considered, read thought about or relied upon. . . .' One of the reasons for an expansive definition is to ensure that the opposing party will have a fair opportunity to cross-examine.") (citations omitted).

█ Contrary to Defendants' arguments, however, wholesale exclusion of Dr. Kurdistani's testimony is not required under Rule 37(c)(1) at this time. "A district court has ultimate discretion in imposing discovery sanctions under Federal Civil Procedure Rule 37." *Nat'l R.R. Passenger Corp. v. Young's Commercial Transfer, Inc.*, No. 113CV01506, 2016 WL 1573262, at *2 (E.D. Cal. Apr. 19, 2016) (citing *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997)). Here, Dr. Kurdistani is Plaintiff's primary expert, and as demonstrated in Plaintiff's MSJ, Dr. Kurdistani's testimony concerning the chemical makeup of Oscillo is critical to Plaintiff's theory of the case. *See* Pl.'s MSJ at 8–11. Thus, if the Court were to exclude Dr. Kurdistani, it would severely prejudice Plaintiff and controvert the public policy favoring deposition of cases on their merits. It further appears that Dr. Kurdistani's failure of disclosure may be corrected via supplementation and a limited deposition, neither of which is likely to delay trial, which is currently set for June 7, 2016. *See* Dkt. No. 322. Dr. Kurdistani's failure to disclose the materials he reviewed may thus be harmless if Dr. Kurdistani supplements his report to disclose all materials he reviewed in preparing his opinions and if he is subject to deposition on those materials. Accordingly, assuming Dr. Kurdistani is able to provide such supplementation, the Court finds that exclusion under Rule 37(c)(1) is not warranted. This case is thus narrowly distinguishable from *Propat Int'l Corp.*, 2005 WL 5957834, at *2, where the court excluded an expert's testimony for failure to disclose materials he considered because the trial was only a week away

and it was unclear whether further deposition would cure the prejudice to the other party. If Dr. Kurdistani is unable to supplement his report to include all information he reviewed or if he is not made available for deposition before trial, however, the Court will consider at that time whether complete exclusion is appropriate.

Defendants argue additionally that Dr. Kurdistani's opinions should be excluded because he testified at deposition that he may offer thoughts concerning the Ferley and Papp clinical studies that are not listed in his report. Defs.' Mot to Strike at 13–14. Defendants are entitled to a full disclosure of the opinions Dr. Kurdistani intends to present. However, Plaintiff correctly notes that Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report" and "contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." *Fahmy v. Jay Z*, No. 2:07-cv-05715, 2015 WL 5680299, at *6 (C.D. Cal. Sept. 24, 2015). Dr. Kurdistani's deposition testimony cited in Defendants' Motion does not definitively establish that Dr. Kurdistani intends to present undisclosed opinions at trial, and without additional context at trial, the Court cannot decide in a vacuum how to limit Dr. Kurdistani's testimony on this point. Accordingly, the Court will reserve ruling on this issue until trial. The Court thus **DENIES** Defendants' Motion to strike Dr. Kurdistani's testimony under Rule 26, without prejudice to renewed objection at trial.

### C. Plaintiff's Motion to Strike

The Court next turns to Plaintiff's Motion to Strike. Plaintiff moves to strike six categories of expert testimony on various grounds, seeking to exclude (1) Dr. DuMont's testimony regarding general homeopathy as irrelevant under Rules 401, 403, and 702 of the Federal Rules of Evidence; (2) the declarations of Drs. Kulik–Carlos,

Merizalde, Moise, Peters, Salinas–Sanchez, Wynn Jones, and Middleton (the "Physician Declarations") and Dr. DuMont's testimony relying on such declarations as irrelevant under Rule 401 and inadmissible under Rule 26 of the Federal Rules of Civil Procedure;[8] (3) the declaration of Pam Middleton as an untimely disclosed expert witness under Rule 26; (4) the testimony of Dr. Spingarn concerning two articles authored by a Dr. Chikramane as irrelevant under Rule 401; (5) the testimony of Dr. Isaacman concerning his analysis of the Ferley and Papp studies as unreliable under Rule 702; and (6) Dr. DuMont's opinions concerning the Ferley and Papp studies as lacking in qualification and unreliable under Rule 702 and confusing to the jury under Rule 403. Pl.'s Mot. to Strike at 1. The Court will first address Plaintiff' relevance arguments under Rule 401 and 403 concerning Dr. DuMont's testimony on general homeopathy, Dr. Spingarn's testimony concerning the Chikramane articles, and the testimony concerning anecdotal evidence Oscillo's efficacy, then turn to Plaintiff's exclusion arguments under Rule 26 concerning the Physician Declarations and Dr. Middleton, and finally address Plaintiff's arguments to exclude testimony concerning the Ferley and Papp studies.

■■■ Concerning Plaintiff's relevance arguments, Plaintiff first seeks to exclude Dr. DuMont's testimony on homeopathy generally and Dr. Spingarn's testimony on the Chikramane articles on the grounds that this case concerns only Oscillo's efficacy, and thus testimony concerning general

homeopathy and dilution principles is inadmissible. Pl.'s Mot. to Strike at 3–4. Dr. DuMont's report contains several paragraphs discussing the history, principles, and preparation of homeopathy drugs, which Dr. DuMont offers as context for his opinion that Oscillo is effective because it acts in the same way as other effective homeopathic remedies. Dkt. No. 244–11 ("DuMont Report") at ¶¶ 23–48. Similarly, Dr. Spingarn's report contains several paragraphs discussing the Chikramane articles on dilution principles generally, which Dr. Spingarn offers in support of his rebuttal to Dr. Kurdistani that the active ingredient in Oscillo may still be present in the drug despite extreme dilution. Dkt. No. 267–7 ("Spingarn Report") at ¶ 9–12. Plaintiff contends that none of this testimony is relevant to any issues in this case and thus should be excluded under Rule 702 and Rule 403. The Court rejects this argument, however.

Under Rule 702, an expert's testimony is relevant if it " 'logically advance[s] a material aspect of the party's case.' " *United States v. Pritchard*, 993 F.Supp.2d 1203, 1207 (C.D. Cal. 2014) (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464–65 (9th Cir. 2014)). While Plaintiff maintains that his case focuses solely on the efficacy of Oscillo, Defendants seek to educate the jury on the principles of homeopathy and homeopathic dilution to show why Plaintiff's evidence concerning the molecular makeup of Oscillo is not dispositive of its effectiveness. Defendants are entitled to make this argument, and its

---

**8.** Plaintiff also argues that these declarations are inadmissible hearsay under Rule 801 of the Federal Rules of Evidence. Pl.'s Mot. to Strike at 10. Defendants have adequately established, however, that the hearsay patient statements discussed in these declarations are statements for the purpose of medical diagnosis, which is an express exception to the rule against hearsay. *See* Fed. R. Evid. 803(4); *c.f.*

Defs.' Opp. to Pl.'s Mot. to Strike at 12; Pl.'s Reply in support of Mot. to Strike at 6. Accordingly, the Court finds that, to the extent these declarations are admitted under Rule 26 and Rule 401, the patient statements they contain fall under the exception for statement made for medical diagnosis or treatment in Rule 803(4).

presentation through Dr. DuMont and Dr. Spingarn does not violate either Rule 702 or Rule 403. *See, e.g., Allen v. Similasan Corp.*, 96 F.Supp.3d 1063, 1072–73 (S.D. Cal. 2015) (permitting expert testimony concerning general homeopathy theory to support expert's conclusion concerning effects of specific homeopathic drugs).

■ For similar reasons, Plaintiff also seeks to exclude testimony from Dr. DuMont and the physicians responsible for the Physician Declarations because they offer anecdotal evidence from their patients as to the efficacy of Oscillo, which Plaintiff contends is unreliable as a matter of law. Pl.'s Mot. to Strike at 11–15. Just as Defendants attempted in their Motion to Strike, however, Plaintiff argues that anecdotal medical evidence is irrelevant and unreliable primarily because Plaintiff's own expert intends to offer that opinion.[9] Generally, this is not an appropriate ground for exclusion of expert testimony. *See Wyler Summit P'ship*, 235 F.3d at 1192; *see also, e.g., Rocky Mountain PSI, LLC v. Thayer*, No. CV 13-23, 2015 WL 1579492, at *3 (D. Mont. Apr. 9, 2015) ("It is not uncommon for opposing experts to reach different conclusions, using different methodologies. It is for the jury to assess which is the more reliable and helpful.") (citing *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th Cir. 2005)); *Rosenberg v. Renal Advantage, Inc.*, No. 11-CV-2152, 2013 WL 3205426, at *3–4 (S.D. Cal. June 24, 2013) (permitting expert to testify based on her personal clinical experiences and recognizing that, "[w]hen evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus on personal knowledge or experience.'"). Dr. DuMont has supplied evidence in his report and deposition that the medical community relies on clinical experience and anecdotal evidence in treating patients and that this reliance is a generally accepted practice in his field. DuMont Depo at 144:3–23, 145:4–145:23; DuMont Report at ¶ 49. To the extent Plaintiff's expert disagrees with Defendants' reliance on anecdotal evidence, Plaintiff may develop this position in his witness examinations, but Plaintiff has failed to show that anecdotal evidence is unreliable as a matter of law. *See, e.g., Forcellati v. Hyland's, Inc.*, Case No. 12-1983, 2015 WL 9685557, at *4 (Jan. 12, 2015) (recognizing California Court of Appeals held in *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal.App.4th 1336, 1348, 133 Cal.Rptr.2d 207 (2003), that a false advertising claim may be proven "by testing, scientific literature, or anecdotal evidence"); *see also, e.g., Allen v. Similasan Corp.*, 96 F.Supp.3d 1063, 1073 (S.D. Cal. 2015) (recognizing a plaintiff's anecdotal evidence of a homeopathic drug's inefficacy was supportive of a false advertising claim). Accordingly, the Court **DENIES**

---

9. Contrary to Plaintiff's suggestion, Dr. DuMont did not testify that anecdotal evidence is unreliable; rather, he testified that practicing physicians in the medical community rely heavily on anecdotal evidence but acknowledged that the scientific community does not regard anecdotal evidence as "proof." *See* Ex. B in support of Pl.'s Mot. to Strike ("DuMont Depo") at 144:3–23, 145:4–145:23, Dkt. No. 272–3. Nor does Plaintiff's evidence concerning the FDA's position on anecdotal evidence indicate that the medical and scientific communities have universally rejected anecdotal evidence. Rather, the cases Plaintiff cites clearly pertain to the FDA's regulation of OTC drugs, not homeopathic drugs, and the FDA's statements concerning anecdotal evidence concerns what evidence is acceptable for the FDA's evaluation of an OTC drug's efficacy, not the standards for admissibility of expert testimony on the efficacy of a homeopathic drug. *See, e.g, Simeon Management Corp. v. F.T.C.*, 579 F.2d 1137, 1143 (9th Cir. 1978); *E.R. Squibb and Sons, Inc. v. Bowen*, 870 F.2d 678, 685 (D.C. 1989); *Pharmaceutical Mfrs. Ass'n v. Richardson*, 318 F.Supp. 301, 309–10 (D. Del. 1970).

Plaintiff's Motion to Strike the Physician Declarations and portions of testimony from Dr. DuMont and Dr. Spingarn on relevance grounds.

Plaintiff's arguments against the Physician Declarations under Rule 26 are equally unpersuasive. Plaintiff first argues that the Physician Declarations must be excluded as "irrelevant fact testimony" because they contain no opinions and should not be considered expert testimony in a way that would exclude them from the reaches of the rule against hearsay in Rule 801. Pl.'s Mot. to Strike at 7–8. The Court has already concluded, however, that the patient statements in the declarations fall under the hearsay exception for medical diagnosis (*see supra* n. 8), and Defendants indicated at oral argument that they intend to present the physicians as live witnesses. The Court has also recognized above that anecdotal evidence is relevant to support of Defendants' theory concerning Oscillo's efficacy. As a result, to extent the Physician Declarations may be considered purely factual testimony, Plaintiff has failed to provide sufficient grounds to exclude the Physician Declarations.

■ Plaintiff then argues in the alternative that the Physician Declarations should be excluded because, if they are considered expert opinion, Defendants have failed to disclose any reports for those physicians as required under Rule 26(a)(2)(B). But under Rule 26(a)(2)(B), the only expert witnesses who must provide a written report of their opinions are experts who are "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. Proc. 26(a)(2)(B). There is no indication in the record that Defendants have specially retained the physicians providing the Physician Declarations, nor has Plaintiff established that it is part of the physicians' duties as employees to provide

expert testimony, nor has Plaintiff demonstrated that the physicians are offering any opinion formed outside the scope of their treatment of patients (*see Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir. 2011)). Accordingly, these witnesses will not be excluded based on their failure to provide a report.

Plaintiff further argues under Rule 26 that, if the physicians supplying the Physician Declarations are considered experts, Dr. Pam Middleton (one of those physicians) should be excluded because she was not disclosed until November 10, 2015, and the expert disclosure deadline was September 14, 2015. Pl.'s Mot. to Strike at 15–16. Defendants acknowledge that Dr. Middleton was not disclosed until November 2015, but argue that Rule 37(c) should not apply to exclude Dr. Middleton because this late disclosure was harmless—Plaintiff had the opportunity to review Dr. Middleton's declaration and seek to depose her before the expert discovery cut-off. Defs.' Opp. to Pl.'s Mot. to Strike at 13. The Court agrees. Plaintiff has not countered Defendants' argument with any showing of prejudice due to Dr. Middleton's late disclosure, and the record does not indicate any such harm. Accordingly, for all of the above reasons, the Court **DENIES** Plaintiff's Motion to Strike the testimony in the Physician Declarations under Rule 26.

Finally, turning to Plaintiff's arguments regarding the Ferley and Papp studies, Plaintiff has failed to show how Dr. Isaacman's testimony concerning the Ferley and Papp studies is unreliable, outside the testimony of Plaintiff's own expert Dr. Kurdistani. Plaintiff argues that Dr. Isaacman's opinions on the Ferley and Papp studies, which Defendants have submitted in rebuttal to Dr. Kurdistani's opinions on the studies, should be excluded because his analysis did not conform to the scientific requirements for a "meta-analysis" and be-

cause the studies themselves are unreliable. Notably, however, Defendants have since indicated that the chart in Dr. Isaacman's report summarizing the two studies is not intended to provide a full meta-analysis, but rather a demonstrative of his "systemic review" of the two studies. Declaration of Dr. Daniel Isaacman in support of Defs.' Opp. to Pl.'s Mot. to Strike ("Isaacman Decl.") ¶¶ 4–8; Defs.' Opp. to Pl.'s Mot. to Strike at 16. Dr. Isaacman has further supplied evidence indicating that the methodology of his systemic review is sound for this purpose. *See* Isaacman Decl. ¶¶ 4–5 and Exs. A–B. Accordingly, as with the issues discussed above, the Court declines to reject one side's expert based solely on the testimony of the other side's expert. *See Wyler Summit P'ship*, 235 F.3d at 1192. Defendants have sufficiently established the reliability of Dr. Isaacman's methodology concerning the Ferley and Papp studies.

The Court does not reach the same conclusion concerning Dr. DuMont's testimony regarding the Ferley and Papp studies, however. Dr. DuMont purports to offer testimony in his report that, based on his experience and education, he has "determined" that the Ferley and Papp studies are reliable. DuMont Report at ¶ 54. Dr. DuMont testified in deposition, however, that he has no expertise in statistical analysis or study design and has no ability to judge the quality of either study. DuMont Depo. at 120:5–8, 121:11–15, 133:9–18, 140:16–24, 143:1–18. Given this admission, Dr. DuMont is not qualified to render an opinion that the Ferley and Papp studies are "reliable," even if such an opinion is caveated that he offers it only as a practitioner, because such an opinion would be inherently subjective and potentially misleading to the jury. *See, e.g., Nelson v. Matrixx Initiatives*, No. C 09-02904, 2012 WL 3627399, at \*12 (N.D. Cal. Aug. 21, 2012), *aff'd sub nom. Nelson v. Matrixx Initiatives, Inc.*, 592 Fed.Appx.

591 (9th Cir. 2015) ("[C]linical judgment does not provide an adequate basis for an opinion on an issue foreign to [an expert's] clinical practice. This is the type of subjective belief and unsupported speculation that Daubert guards against."). Accordingly, the Court **DENIES** Plaintiff's Motion to Strike Dr. Isaacman's analysis of the Ferley and Papp studies but **GRANTS** Plaintiff's Motion to Strike Dr. DuMont's opinions concerning the reliability of the Ferley and Papp studies.

## IV. SUMMARY JUDGMENT

Having ruled on the parties' Motions to Strike, the Court now turns the parties' Motions for Summary Judgment. Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing evidence at the summary judgment stage, "the judge does not weigh conflicting evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The Court must view the evidence and the inferences therefrom in the light most favorable to the non-moving party, and the moving party bears the initial burden to demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its initial burden, the burden shifts to the non-moving party to show a genuine issue for trial by establishing that the fact in contention is material (i.e. affecting the outcome of

the suit under the governing law) and the dispute is genuine (i.e. the evidence is such that a reasonable jury could return a verdict for the nonmoving party). *Anderson*, 477 U.S. at 248, 251–52, 106 S.Ct. 2505; *Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir. 1987).

■ Given the Court's rulings above, there are numerous and clear disputes of material facts that preclude summary judgment in either side's favor. Plaintiff argues that he is entitled to summary judgment because the "irrefutable scientific facts" established in Dr. Kurdistani's testimony show that Oscillo is a sugar pill. Pl.'s MSJ at 6, 9–10. But contrary to Plaintiff's characterization, Dr. Kurdistani's testimony is not "irrefutable." Rather, Defendants have presented sufficient expert testimony to establish a genuine dispute as to whether Oscillo's dilution methods render the product ineffective. *See supra* Section III.C. Defendants likewise argue in their MSJ that Plaintiff cannot possible meet his burden to show Oscillo is ineffective because Dr. Kurdistani's opinion is unreliable.[10] Defs.' MSJ at 17–18. But as held above, Dr. Kurdistani's opinions are in fact admissible and thus present a genuine issue of material fact as to whether Oscillo is effective. *See supra* Section III.B. Accordingly, the Court is precluded from granting summary judgment in either side's favor. This case boils down to a battle of the experts, and such a battle must be left for the jury's resolution. *See, e.g., Optivus Tech., Inc. v. Ion Beam Applications S.A.*, No. CV03-2052, 2005 WL 6070811, at *31 (C.D. Cal. Mar. 14, 2005) *aff'd*, 469 F.3d 978 (Fed.

Cir. 2006) ("The court is once again faced with conflicting expert declarations. Resolving such conflicts and the weighing of evidence are jury functions, not those of a judge."); *Avery Dennison Corp. v. Acco Brands, Inc.*, CV 99–1877, 2000 WL 986995, *12 (C.D. Cal. 2000) ("In light of the ... conflicting evidence and expert opinions, this Court may not weigh the evidence as presented by the parties. The inferences to be drawn from the parties' evidence could weigh in favor of either party."); *see also, e.g., Hansen Beverage Co. v. Vital Pharm., Inc.*, No. 08-CV-1545, 2010 WL 1734960, at *8 (S.D. Cal. Apr. 27, 2010) (holding that, when confronted with conflicting expert opinions, "[b]oth VPX and Hansen have presented evidence from which a reasonable juror could find by a preponderance of the evidence that each is entitled to a verdict in its favor. Because Hansen's and VPX's materials demonstrate there is a genuine issue of material fact as to whether VPX's 7–hour duration claim is literally false, the Court denies the cross-motions for summary judgment."); *CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F.Supp.2d 1285, 1300 (E.D. Cal. 2012) ("[T]he two conflicting expert opinions create a material issue of fact. While CytoSport cites *Gable v. Nat'l Broad. Co.*, 727 F.Supp.2d 815, 836–37 (C.D. Cal. 2010), for the proposition that dueling expert opinions do not necessarily create a triable issue of fact, that case is distinguishable. Gable dealt with relatively simple literary works that the trial court analyzed on its own, finding that the expert comparisons were largely superfluous. Here, the experts offer competing surveys which require some technical ex-

---

**10.** Defendants also summarily conclude that Plaintiff cannot possibly meet his burden to show that Oscillo did not work for him personally because he relies only on his own declaration for that evidence. Defs.' MSJ at 15–16. Defendants offer no contrary evidence concerning Plaintiff's symptoms nor any authority to suggest why Plaintiff's declaration is insufficient to meet Plaintiff's burden. The Court thus rejects Defendants' argument on this point.

pertise and familiarity with accepted principles. Accordingly, VPX raises material disputes with regard to this factor, and it weighs against granting judgment.") (citations omitted). The Court thus **DENIES** the parties' Motions for Summary Judgment.

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 242) and **DENIES** Defendants' Motion for Summary Judgment (Dkt. No. 244). The Court **DENIES** Defendants' Motion to Strike (Dkt. No. 273), but **ORDERS** that Plaintiff shall disclose, within 7 days of this Order, a supplemental report for Dr. Kurdistani in accordance with this Order and make Dr. Kurdistani available for deposition, within 7 days of disclosing the supplemental report, limited to the topic of the new information included in the supplemental report. Finally, the Court **GRANTS** Plaintiff's Motion to Strike (Dkt. No. 273) as it concerns Dr. DuMont's opinions concerning the reliability of the Ferley and Papp studies and otherwise **DENIES** Plaintiff's Motion to Strike.

**IT IS SO ORDERED.**